Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| *PUERTO RICO HORSE OWNERS ASSOCIATION*, por sí y representación de cada uno de sus socios **Recurrido** <br><br> V. <br><br> CONFEDERACIÓN HÍPICA DE PUERTO RICO, por sí y en representación de sus socios; et al **Peticionario** <br><br> *CAMARERO RACE TRACK CORP* **Peticionario** | KLCE202400992 | *CERTIORARI* procedente del Tribunal de Primera Instancia Carolina <br><br> Caso Núm: CN2021CV00388 <br><br> Sobre: Enriquecimiento Injusto; Daños y Perjuicios y Solicitud de Orden |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente.**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 3 de octubre de 2024.

El 6 de septiembre de 2024, Camarero Race Track Corp. (Camarero o peticionario) compareció ante nos mediante un *Certiorari* y solicitó la revisión de una *Resolución* que se dictó el 6 de junio de 2024 y se notificó el 10 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar a la *Moción de Desestimación* que presentó Puerto Rico Horse Owners Association (PRHOA o recurrido). En consecuencia, desestimó la *Reconvención* que presentó Camarero.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

I.

El 26 de noviembre de 2021, PRHOA presentó una *Demanda* sobre enriquecimiento injusto, daños y perjuicios y solicitud de

orden en contra de Camarero, la Confederación Hípica de Puerto Rico, Inc. (Confederación), los miembros de la Confederación y otros.[1] En esencia, alegó que el 23 de enero de 2007, Camarero otorgó un *Contrato* con la Confederación. Sostuvo que dicho *Contrato* estaba vigente, toda vez que expiró y no se había otorgado un nuevo contrato. Arguyó que, el *Contrato* disponía que Camarero y la Confederación se comprometían a realizar pagos equivalentes al 50% en concepto de cuotas y, que las obligaciones contemplaban a las partes contratantes y terceros no contratantes. Además, explicó que dicho *Contrato* incluía a otros dueños de caballos no afiliados a la Confederación.

En virtud de lo anterior, esbozó que la Confederación, Camarero y las otras partes incluidas en la *Demanda* habían incurrido en un patrón para continuar deduciendo ilegalmente las partidas en concepto de cuotas que pagaban los dueños de caballos. Sostuvo que dicha conducta constituía actos dirigidos a continuar el patrón de enriquecimiento injusto en contra de PRHOA y sus miembros. Enfatizó, que PRHOA y sus miembros habían sufrido un empobrecimiento ya que el dinero retenido no pudo ser disfrutado por los miembros de la PRHOA. Asimismo, esgrimió que las deducciones realizadas a PRHOA le habían permitido a Camarero continuar percibiendo los frutos del *Contrato* sin tener que asumir los pagos acordados y sin afectar los ingresos de la Confederación.

Por todo lo anterior, solicitó una indemnización de $1,500,000.00 por concepto de enriquecimiento injusto y una suma no menor de $500,000.00 por daños y perjuicios. A su vez, solicitó la imposición de costas, gastos y honorarios de abogado y que el TPI emitiera una orden a Camarero y la Confederación para que cesaran y desistieran de hacer deducciones a PRHOA y sus miembros.

---

[1] Véase, págs. 1-10 del apéndice del recurso.

El 21 de enero de 2022, la PRHOA presentó una *Segunda Demanda Enmendada* a los fines de incluir una causa de acción por doble cobro y reembolso.

En respuesta, el 29 de enero de 2024, Camarero presentó su *Contestación a Segunda Demanda Enmendada; Reconvención; y Demanda Contra Coparte* en la cual negó la mayoría de las alegaciones y presentó sus respectivas defensas afirmativas.[2] En específico, planteó que aportaban el 50% de los gastos acordados en el *Contrato*. De igual forma, apuntó que el *Contrato* disponía que los jinetes y entrenadores eran los terceros mencionados expresamente en el *Contrato* y, que dicho *Contrato* no contemplaba que otros posibles terceros se beneficiaran de forma gratuita. Esbozó que la PRHOA y sus socios se habían beneficiado de sus aportaciones, por lo que Camarero tenía una acreencia en contra de la PRHOA. Por último, añadió que los daños reclamados eran inexistentes.

En su *Reconvención*, Camarero indicó que, sufrieron daños y perjuicios, toda vez que la Confederación incumplió con el *Contrato*. En específico, argumentó que el incumplimiento con las disposiciones del *Contrato* complicaba la preparación del reporte del retroactivo ya que el mismo estaba diseñado para que todos los dueños de caballos aportasen a los gastos de la industria hípica. De igual forma, esbozó que las actuaciones de la PRHOA constituían una interferencia torticera en la relación contractual entre Camarero y la Confederación, *Contrato* con el cual PRHOA se comprometió en su capacidad personal. Por todo lo anterior, solicitó la suma de $2,127,651.54 por concepto de daños y perjuicios e interferencia torticera. Por último, Camarero instó una *Demanda Contra Coparte* en la cual planteó que, en virtud de la cláusula seis (6) inciso c del

---

[2] Íd., págs. 33-72.

*Contrato,* la Confederación relevó a Camarero de responder por pagos y deducción de cuotas.

Tras varios trámites procesales, el 14 de febrero de 2024, la PRHOA presentó una *Moción de Desestimación.*[3] En síntesis, alegó que la *Reconvención* que presentó Camarero era un intento doloso y temerario de inducir a error al TPI, toda vez que dicho asunto fue resuelto por el Tribunal Supremo de Puerto Rico. Sostuvo que en el caso *PRHOA v. Confederación Hípica,* 202 DPR 509 (2019), el Tribunal Supremo resolvió que ni la PRHOA ni sus miembros eran parte del *Contrato* que se otorgó el 23 de enero de 2007 entre la Camarero y la Confederación. Además, enfatizó que la creación de la PRHOA estaba legalmente reconocida. Por todo lo anterior, razonó que procedía desestimar la *Reconvención* ya que no exponía una reclamación que justificara la concesión de un remedio. En la alternativa, planteó que el ordenamiento jurídico impedía las contrataciones a nombre de terceros y salvaguardaba el derecho de la libre organización y asociación.

En desacuerdo, el 25 de marzo de 2024, Camarero presentó *Oposición a Moción de Desestimación.*[4] Indicó, que la desestimación no era aplicable a las circunstancias del caso de epígrafe, dado que existían controversias de hechos y de derecho por las cuales era necesario realizar un descubrimiento de prueba. Así pues, reiteró que la controversia con relación al incumplimiento de los dueños de caballos con las disposiciones del *Contrato,* no fueron sujeto a descubrimiento de prueba en el caso *PRHOA v. Confederación Hípica,* supra. Por último, adujo que el derecho constitucional a la libertad de asociación era oponible ante el Estado y, Camarero era un ente privado.

---

[3] Íd., págs. 75-108.
[4] Íd., págs. 109-113.

Luego de examinar los argumentos presentados por las partes, el 10 de junio de 2024, el TPI emitió y notificó una *Resolución* en la cual declaró Ha Lugar la *Moción de Desestimación* que presentó PRHOA.[5] En específico, el TPI determinó que las únicas partes contrayentes en el *Contrato* que se otorgó el 23 de enero de 2007 eran Camarero y la Confederación. Asimismo, el TPI enfatizó que no era la primera vez que las disposiciones de dicho *Contrato* estaban siendo evaluadas por los tribunales. Particularmente, destacó que en el caso *PRHOA v. Confederación Hípica*, supra, el Tribunal Supremo resolvió lo siguiente:

> En el contrato entre la Confederación y Camarero sí se escribieron disposiciones con obligaciones para todos los dueños de caballos. Sin embargo, "[l]os contratos s[o]lo producen efecto entre las partes que los otorgan [...]". Art. 1209 del Código Civil, 31 LPRA sec. 3374. Nadie puede "contratar a nombre de otro sin estar por este autorizado o sin que tenga por la ley su representación legal". Art. 1211 del Código Civil, 31 LPRA sec. 3376. Aunque el Art. 1209, 31 LPRA sec. 3374, contempla que se pacten estipulaciones en favor de un tercero y que este pueda exigir su cumplimiento, se requiere que antes le haga saber su aceptación al obligado. La Confederación no tiene autoridad legal para representar a los dueños de caballos no confederados. Tampoco tiene la autorización de estos.

A su vez, el Tribunal Supremo recalcó que "los dueños de caballos son libres para organizarse o no organizarse con el fin de lograr los términos que mejor les convengan en su relación con la empresa operadora". Por último, el TPI concluyó que la *Moción de Desestimación* permitía desestimar una causa de acción cuando dejaba de exponer una reclamación que justificara la concesión de un remedio. Apuntó que, aun aceptando como ciertos los hechos, y evaluando la información que surgía del expediente, no procedía la *Reconvención* que presentó Camarero.

Inconforme, el 25 de junio de 2024, el Camarero presentó una *Moción de Reconsideración* en la cual reiteró sus planteamientos

---

[5] Íd., págs. 114-120.

iniciales.[6] Enfatizó que, el Tribunal Supremo en el caso *PRHOA v. Confederación Hípica,* supra, únicamente se limitó a atender la reclamación de la devolución de las aportaciones que los miembros de la PRHOA realizaron a la clínica veterinaria y en cuanto a la participación de PRHOA en el *Contrato* como persona jurídica.

En respuesta, el 15 de julio de 2024, PRHOA presentó su *Oposición a Moción de Reconsideración.*[7] En esencia, reafirmó los argumentos de la *Moción de Desestimación.* Además, adujo que las alegaciones la *Reconvención* eran las mismas controversias que el Tribunal Supremo atendió en el caso *PRHOA v. Confederación Hípica,* supra. Es decir, las controversias trataban sobre si PRHOA y sus miembros eran parte del *Contrato* y, si los miembros de PROHA tenían derecho de organizarse libremente. Por último, sostuvo que, al no existir un incumplimiento de contrato, la *Reconvención* dejaba de exponer una reclamación que justificara la concesión de un remedio.

Así las cosas, el 12 de agosto de 2024, el TPI emitió una *Orden* que se notificó el 16 de agosto de 2024, en la cual declaró No Ha Lugar a la *Moción de Reconsideración* que presentó Camarero. Aún inconforme, el 6 de septiembre de 2024, Camarero presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Erró el TPI al desestimar la reconvención de Camarero mediante moción de desestimación al amparo de la regla 10.2 (5) de las de procedimiento civil, sin garantizar el debido proceso de ley de camarero salvaguardado mediante el proceso de descubrimiento de prueba pues no permitió su culminación y oportunidad aplicable de enmienda a la reconvención por información provista por el propio demandante-recurrente para acumular en su carácter personal a los miembros de los demandantes-recurridos que así estaban obligados mediante el contrato vinculante entre las partes.**

---

[6] Íd., págs. 121-130.
[7] Íd., págs. 132-149.

Atendido el recurso, el 17 de septiembre de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 26 de septiembre de 2024 para presentar su oposición al recurso. Oportunamente, el 26 de septiembre de 2024, PRHOA presentó su *Alegato en Oposición a Certiorari.* Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nuestra consideración. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de

Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones

discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

III.

Recientemente, nuestro Tribunal Supremo tuvo ante sí el caso *PRHOA v. Confederación Hípica*, 202 DPR 509 (2019), que trataba sobre la relación contractual entre la Confederación, una asociación de dueños de caballos que participaban del deporte hípico y, Camarero, empresa que operaba el hipódromo donde se practicaban las carreras. A principios de 2013 varios dueños de caballos se desafiliaron de la asociación y crearon la PRHOA. A pesar de esto, la empresa operadora continuó imponiéndole a PRHOA las obligaciones que surgían de un *Contrato* entre ella y la asociación de la que estos se desafiliaron. El Tribunal Supremo determinó que dicha imposición era contraria a la ley. Particularmente, el Tribunal Supremo resolvió que l*os* miembros de la PRHOA no estaban sujetos a las obligaciones y beneficios pactados en el *Contrato* entre la Confederación y Camarero. A su vez, reiteró que la PRHOA nunca fue parte de dicho *Contrato*. Por ello, tenían derecho a que se les devolvieran las sumas que se les retuvieron indebidamente, una vez descontado el gasto por los servicios veterinarios que utilizaron.[8]

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las

---

[8] Véase, *PRHOA v. Confederación Hípica*, 202 DPR 509 (2019).

situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones